UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BOBBY STRICKLAND                                    CIVIL ACTION

VERSUS                                             NO: 21-457

SLIDELL ET AL.                                     SECTION: "A" (1)


**ORDER AND REASONS**

Before the Court is a **Rule 12(B)(6) Motion to Dismiss First Amended Complaint (Rec. Doc. 54)** and a **Motion for Partial Summary Judgment (Rec. Doc. 58)** filed by Defendants, the City of Slidell, Officer Zacharia Colgan, and Officer Charles Esque. The motions were set for submission on September 3, 2025, on the briefs without oral argument.[1] Plaintiff, Bobby Strickland, who was proceeding *pro se* at the time of his response, opposes both motions.[2] The Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss (Rec. Doc. 54) and the Motion for Summary Judgment (Rec. Doc. 58) for the reasons set forth below.

---

[1] The Motion to Dismiss and the Motion for Partial Summary Judgment were originally noticed for submission on July 2, 2025, and July 23, 2025, respectively; however, on July 24, 2025, the Court found that Plaintiff, who was proceeding *pro se* at the time, had not been served with either motion at his place of incarceration. As a result, the Court ordered that the motions be continued so that he may respond. Rec. Doc. 65. The Court ordered that Ms. Tobin had until December 5, 2025, to withdraw, and that it would take up the motions. Rec. Doc. 84.

[2] Rec. Doc. 68, Opp. to Mot. to Dismiss and Mot. for Partial Summary Judg. On September 3, 2025, Demetra S. Tobin enrolled as Mr. Strickland's attorney. Rec. Doc. 79. At a status conference on October 8, 2025, the Court extended Mr. Strickland's time to file any new oppositions until November 30, 2025. Rec. Doc. 83. At a follow-up status conference on December 3, 2025, Ms. Tobin notified the Court that she did not plan to file any opposition on behalf of Mr. Strickland and instead wished to withdraw. Mr. Strickland has had three attorneys represent him in this matter, and two have withdrawn, citing difficulties in the attorney-client relationship. Rec. Doc. 10 & 50. Although Ms. Tobin indicated to the Court that she would also like to withdraw as Mr. Strickland's attorney, she has not filed any motion to do so. Rec. Doc. 84. Further, Mr. Strickland is currently incarcerated and has moved facilities several times. Upon arrival at one detention center, prison authorities allegedly discarded his legal papers related to this case. Rec. Doc. 66.

## I.    Background

This is a section 1983 action arising out of the defendant officers' alleged use of excessive force during an encounter with Mr. Strickland. The events began on March 6, 2020, at approximately 12:30 a.m., when Mr. Strickland's girlfriend, Gina Fontenot, drove him to a pool hall in Slidell.[3] Around the same time, Officer Colgan noticed Ms. Fontenot's vehicle because it was parked next to the Long Stay Motel, a high drug area, and he witnessed a suspicious female approach the vehicle.[4] Mr. Strickland denies that they were near the motel or that he was buying drugs from there; however, he had used cocaine earlier in the night.[5] Either way, when they drove off, Officer Colgan followed them down the road for approximately 10 minutes before eventually activating his police lights and sirens, and telling Ms. Fontenot to "pull over" through the loudspeaker of his patrol car.[6]

Mr. Strickland asked Ms. Fontenot to pull into a Lowe's Home Improvement Store ("Lowe's") parking lot because he hoped that the Lowe's security cameras would capture any interaction between Officer Colgan and him.[7] Mr. Strickland believed that Officer Colgan recognized him and his girlfriend's vehicle from a previous argument with Colgan while he was off duty.[8] So, claiming to fear for his safety, Mr. Strickland jumped out of the vehicle and began running from Officer Colgan towards some sheds outside of Lowe's.[9] At this point, the parties' versions of events diverge concerning how Mr. Strickland sustained his injuries and when they occurred.

---

[3] Rec. Doc. 37, First Amend. Compl., at ¶ 26; Rec. Doc. 58-3, Exhibit 3 – Strickland Depo., at 86-87
[4] Rec. Doc. 58-2, Colgan Depo., at 29.
[5] Rec. Doc. 58-3 at 151, 152.
[6] *Id.*; Rec. Doc. 37 at ¶ 31.
[7] *Id.* at ¶ 14.
[8] *See id.*
[9] *Id.* at ¶ 34.

Mr. Strickland alleges that Officer Colgan caught up with him and grabbed his jacket. He forcefully stiff-armed Officer Colgan, broke free, and continued running.[10] As Mr. Strickland ran, he tripped behind the sheds, but caught himself, causing cuts and lacerations to his hand.[11] The fall allowed Officer Colgan to reach him again. Upon approaching Mr. Strickland, Officer Colgan tased him, causing Mr. Strickland "to collapse to the ground, shocked, but otherwise uninjured."[12] Mr. Strickland asserted that Officer Colgan continued to tase him three more times, and then proceeded to handcuff him and call for backup.[13] Officer Esque, who was working a detail at the Walmart next door, arrived, and Mr. Strickland began arguing and yelling at both officers.[14] Officer Esque engaged in a verbal altercation with Mr. Strickland and threatened to beat him. In return, Mr. Strickland said he would spit on them.[15] So, Officer Esque allegedly hit Mr. Strickland in the head with a 12" metal flashlight several times while he was sitting on the ground handcuffed.[16] Mr. Strickland said that Officer Colgan observed the use of excessive force but failed to intervene.[17] He also maintains that he was no longer fleeing or resisting the officers when Officer Esque struck him.[18]

Officer Colgan denies that Mr. Strickland ever "stiff-armed" him.[19] Instead, he testified that as he was running after Mr. Strickland, he heard a thud and then saw Mr. Strickland lying on the ground. Mr. Strickland got up and started running towards him with his hands concealed.

---

[10] *Id.* at ¶ 36.
[11] Rec. Doc. 58-3 at 133-134.
[12] Rec. Doc. 37 at ¶ 37.
[13] *Id.* at ¶¶ 37-40.
[14] *Id.* at ¶¶ 41-45.
[15] *Id.* at ¶¶ 44-45.
[16] *Id.* at ¶ 46.
[17] *Id.* at ¶ 47.
[18] *Id.* at ¶ 48.
[19] Rec. Doc. 58-2 at 48-49.

Officer Colgan then tased Mr. Strickland after he refused to follow his command to stop running.[20] Somehow, he and Mr. Strickland fell to the ground together, but he was not able to get Mr. Strickland in handcuffs until he called for backup and Officer Esque arrived.[21] Both officers assert that Mr. Strickland was compliant and apologetic after his arrest.[22] After they restrained Mr. Strickland, the officers noticed that he had an injury to his face, so they called an ambulance.[23] Officer Colgan assumed that the "thud" he heard was Mr. Strickland running into a metal railing behind the sheds, which he believed caused the facial injuries, although he did not actually witness the fall.[24]

According to Officer Esque, when he came on the scene, "Officer Colgan was actively trying to hold Mr. Strickland on the ground."[25] Officer Esque pushed Mr. Strickland to the ground with his foot, and only then were the two officers able to forcibly put him in handcuffs.[26] Officer Esque then noticed Mr. Strickland's injuries; he took a photo of them, and the officers called an ambulance. Officer Esque denies ever striking Mr. Strickland in the face.[27]

Mr. Strickland was taken to University Medical Center ("UMC") in New Orleans, Louisiana, for treatment of his multiple facial injuries, which included bruises, lacerations, broken teeth and fractures. He underwent surgery at UMC to repair fractures to both his right mandibular and right auditory canal.[28]

Shortly after the incident, Officer Colgan followed protocol and requested any video

---

[20] *Id.* at 39-40.
[21] *Id*. at 50.
[22] *Id.* at 55; Rec. Doc. 58-1, Esque Depo, at 34.
[23] Rec. Doc. 58-2 at 51.
[24] *Id.* at 41-44.
[25] Rec. Doc. 58-1, at 29.
[26] *Id.* at 31, 32-33, 49-50.
[27] *Id.* at 53.
[28] Rec. Doc. 1., Compl., at ¶ 20.

surveillance from that night; he received one video from Lowe's.[29] Officers Colgan and Esque said that they reviewed the footage, and it showed, at most, Officer Colgan and Ms. Fontenot's cars in the middle section of the parking lot.[30] Mr. Strickland's former counsel attempted to obtain the security video, but a Lowe's manager reported that the Slidell Police Department already seized it.[31] However, Mr. Strickland alleges that the Slidell City Attorney responded to his public records request saying that "the Slidell Police Department did not retrieve any videos from Lowe's and that there was no taser video or audio."[32]

In connection with the incident on the morning of March 6, 2020, Mr. Strickland was charged with two felonies: (i) possession of a schedule II controlled dangerous substance less than 2 grams (La. R.S. 40:967 (C)(1)); and (ii) resisting a police officer with force or violence (La. R.S. 14:108.2). Mr. Strickland pleaded guilty to both charges in the Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana.[33]

## II.    The Pending Motions

Prior to entering his guilty pleas, Mr. Strickland filed the instant lawsuit against the arresting officers, Colgan and Esque, in their individual capacities, and the City of Slidell. He asserts that the officers are liable under 42 U.S.C. § 1983 for violating his rights guaranteed under the Fourth and Fourteenth Amendments by using excessive force and failing to intervene in the attack. He also brought state law tort claims against them for assault, battery, and spoliation of evidence.[34] He further alleges state law violations against the City of Slidell under theories of negligent or intentional tortious hiring and retention, and that it is vicariously liable for Officer

---

[29] Rec. Doc. 58-2 at 66-67.
[30] *Id.* at 69; Rec. Doc. 58-1 at 53.
[31] Rec. Doc. 1 at ¶ 24.
[32] *Id.* at ¶ 26.
[33] Rec. Doc. 16, State of Louisiana Uniform Sentencing Commitment Order.
[34] *Id.* at ¶¶ 40–54.

Colgan and Esque's actions.[35] He seeks attorney's fees pursuant to 42 U.S.C. § 1988(b) as well as compensatory and punitive damages.[36]

Defendants seek to dismiss the First Amended Complaint because it fails to state a claim against them.[37] More specifically, they cite *Heck v. Humphrey* to argue "that a § 1983 suit lacks merit where the plaintiff is convicted of the underlying crime, or the plaintiff forcefully resisted arrest, as in the instant matter." 512 U.S. 477, 486-87 (1994).[38] In the alternative, they raise the defense of qualified immunity.[39] Defendants also assert that Mr. Strickland's state law claims against the officers are barred under *Heck* because Louisiana does not permit plaintiffs to support state-law claims that challenge the validity of an underlying criminal conviction.[40] Lastly, they maintain that Mr. Strickland's section 1983 claims against the City of Slidell for inadequate training/supervision and negligent or intentional hiring/ retention must be dismissed because he failed to demonstrate that the City's policies were inadequate.[41] However, this argument, as discussed below, is confusing because Mr. Strickland's amended complaint establishes that he initiated *state law* claims against the City of Slidell, not section 1983 claims.[42] Defendants reference the state law claims against the City in their Memorandum in Support, but they analyze them as federal section 1983 claims instead.[43]

A few weeks after filing their Motion to Dismiss, Defendants also filed the pending Motion for Summary Judgment, seeking that the claims for punitive damages and attorneys' fees be

---

[35] *Id.* at ¶¶ 55–61.
[36] *Id.* at ¶ 1.
[37] Rec. Doc. 54, Rule 12(B)(6) Mot. to Dismiss First Amend. Comp.
[38] Rec. Doc. 54-1. Memo. In Support of Mot. to Dismiss., at 6-7.
[39] *See id.* at 10-11.
[40] *See id.* at 8-9.
[41] *See id.* at 11-13.
[42] Rec. Doc. 1 at ¶¶ 55–61; Rec. Doc. 37 at ¶¶ 64-60.
[43] *See* Rec. Doc. 54-1 at 5, 11-14.

dismissed.[44]

## III.    Legal Standard

The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (quoting *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Legal conclusions must be supported by factual allegations. *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). When ruling on a 12(b)(6) motion, the Court may consider the complaint and a limited number of extrinsic materials, including any attached exhibits and documents that the petition incorporates by reference. *Stevens v. Lake Charles Coca-Cola Bottling Co.*, 2011 WL 2173649, at *2 (W.D.La. June 1, 2011).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the

---

[44] Rec. Doc. 58, Mot. for Partial Summary Judg., at 1.

non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

## IV.    Discussion

### a.  § 1983 Excessive Force Claims against Officers Esque and Colgan

Mr. Strickland's 42 U.S.C. § 1983 excessive force claims against Officers Colgan and Esque are governed by the Fourth Amendment, which protects individuals from unreasonable seizures. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). Defendants argue that Mr. Strickland cannot bring a claim for the alleged violation of his constitutional rights because he pleaded guilty to resisting a police officer with force or violence (La. Rev. Stat. § 14:108.2). To support this, they quote the Supreme Court's language in *Heck v. Humphrey*

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. 2254 […][45]

512 U.S. 477, 486-87 (1994).  Under *Heck*, a plaintiff convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if "judgment in favor of the [plaintiff] would

---

[45] *See* Rec. Doc. 54-1 at 7.

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. In other words, claims that seek to nullify or call into question an underlying conviction or sentence must be dismissed if the conviction or sentence has not been invalidated. *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

However, Heck does not operate as a *per se* bar on excessive force claims, even when, as here, there has been a conviction for interfering with or resisting a police officer. *See id.* at 498. The Fifth Circuit explained in *Bush* that the *Heck* determination is highly fact-dependent and that courts must look to the nature of the offense and the claim. *Id.* at 497. For example, "a claim that excessive force occurred after the arrestee has ceased his or her resistance would not necessarily imply the invalidity of a conviction for the earlier resistance" if "the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Id.* at 498. In *Bush*, the plaintiff introduced evidence that the alleged excessive force used against her occurred *after* she ceased resisting arrest. *Id.* Even though the plaintiff was resisting moments before, she alleged that the arresting officer unreasonably pushed her face into the back of an automobile after she was handcuffed and no longer resisting. *Id.* at 496. The criminal court did not determine how long the plaintiff's resistance lasted or when she was injured. *Id.* Accordingly, *Heck* did not apply, and the plaintiff could proceed with her excessive force claims against the officer. *See id.*

In this case, as in *Bush*, there is conflicting evidence about whether Mr. Strickland was injured before or after his resistance ceased. The amended complaint alleges that his injuries occurred while he was handcuffed and non-combative. And the criminal court made no findings as to how he sustained his injuries or when they occurred. Because Mr. Strickland's state-court conviction relates to events that happened as he fled from Officer Colgan, and his excessive-force

claim relates to events that occurred after his detention, it is possible that both Officer Esque's alleged assault on Mr. Strickland was objectively unreasonable, and thus excessive, and that Mr. Strickland resisted arrest. Accordingly, the Court finds that Mr. Strickland's excessive force claim against Officer Esque is temporally and conceptually distinct from his conviction for resisting arrest. Therefore, the claim against Officer Esque is not *Heck*-barred.

Similarly, Mr. Strickland's amended complaint alleges that Officer Colgan continued to tase him approximately three more times after he was disabled on the ground. While not yet in handcuffs, Mr. Strickland argues that he was no longer running or resisting when Officer Colgan administered the final three shocks. It can therefore be possible that both Mr. Strickland resisted arrest, and that Officer Colgan unreasonably fired his taser, without calling into question the state court conviction. Thus, *Heck* also does not preclude the excessive force claims against Officer Colgan. However, as discussed below, the Court does not find that Officer Colgan injured Mr. Strickland, nor that the use of force was excessive given the circumstances.

### b. *Defense of Qualified Immunity*

Defendants also argue that Mr. Strickland's section 1983 claims should be dismissed because qualified immunity protects the officers, in their individual capacity, from civil suit. A government official performing professional functions is entitled to qualified immunity unless the conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Bush* 513 F.3d at 500 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). While qualified immunity is technically an affirmative defense, once it has been raised, it is the plaintiff's burden to negate the defense. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the qualified immunity analysis: (1) the Court must determine

whether Mr. Strickland has alleged a violation of a statutory or constitutional right; (2) then the Court must determine whether the officers' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known."[22] *Bush* 513 F.3d at 500.

Under the first step, to state a violation of the Fourth Amendment's prohibition on excessive force, a plaintiff must allege: an injury that resulted directly and only from the use of force that was excessive to the need, and that the use of force was objectively unreasonable. *Id.* at 500-501. Here, the injury caused by Officer Esque is apparent. Mr. Strickland alleges that Officer Esque "viciously beat him, striking him several times in the head with the 12" metal flashlight, knocking [him] temporarily unconscious" and knocking his bottom tooth out.[46] Following the incident, Mr. Strickland was taken to UMC, where he underwent surgery to repair a right mandibular fracture as well as a right auditory canal fracture.[47]

Even though Mr. Strickland admits that he yelled at and threatened to spit on Officer Esque, that alone does not make the officer's use of force reasonable. In fact, the Fifth Circuit has consistently held that "officers engage in excessive force when they physically strike a suspect who is not resisting arrest." *Santander v. Salazar*, 133 F.4th 471, 480 (5th Cir.2025) (quoting *Spiller v. Harris Cnty.*, Texas, 113 F.4th 573, 578 (5th Cir. 2024); *see also Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive"). In *Soto v. Bautista,* the Fifth Circuit addressed a similar situation where arresting officers beat a non-compliant plaintiff after he spat on them. 21-40803, 2023 WL 2624785 (5th Cir. Mar. 24, 2023). The court held that the officers were not entitled to qualified immunity because spitting did not pose a threat to the officer's safety, and

---

[46] Rec. Doc. 37 at ¶¶ 46, 51.
[47] Rec. Doc. 1 at ¶ 20.

even if it did, the act did not warrant such a brutal response. *Id.* at 4. Here, Mr. Strickland did not

spit, nor attempt to spit on the officers; he merely threatened to spit on them. Moreover, like the

situation in *Soto,* Mr. Strickland alleges that Officer Esque's use of force was not only

inappropriately violent—it was also immediate.[48] *See id.* Officer Esque did not implement any

other strategy to address Mr. Strickland's harassment before employing physical force. The

unreasonableness of his response, if proven, is further highlighted by Officer Colgan's lack of

response to the same provocation.

      Turning to the second step, although the law at the time of Mr. Strickland's arrest was

clearly established that an arresting officer has the right to use some degree of physical force to

effect the arrest, "the permissible degree of force depends on the severity of the crime at issue,

whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting

arrest or attempting to flee." *Bush* 513 F.3d at 502. Here, under Mr. Strickland's account of the

events, he was not resisting arrest or attempting to flee when Officer Esque hit him with a metal

flashlight several times. As the Fifth Circuit pointed out "the Fourth Amendment's reasonableness

test is not capable of precise definition or mechanical application;" however, the test is clear

enough that Officer Esque should have known that he could not strike Mr. Strickland while he was

restrained and subdued. *Id.* at 501 (internal quotation marks omitted). Accordingly, Mr. Strickland

has pleaded plausible facts sufficient to survive Officer Esque's assertion of qualified immunity.

      Conversely, Officer Colgan is entitled to qualified immunity because the excessive force

claims against him fail under both steps of the analysis. First, Mr. Strickland does not allege that

Officer Colgan caused him any injury. Rather, he states that "the shock [of the taser] caused [him]

to collapse to the ground, but otherwise he was uninjured."[49] Even if Mr. Strickland alleged a

---

[48] Rec. Doc. 37 at ¶ 45-46.
[49] Rec. Doc. 37 at ¶ 37.

legally cognizable injury, Officer Colgan's use of force would not be excessive. The objective reasonableness of force used by an officer depends on the facts and circumstances of each case, "such that the need for force determines how much force is constitutionally permissible." *Bush* 513 F.3d at 501. The Fifth Circuit pays "particular attention to whether officers faced active resistance when they resorted to a taser." *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir.2021). Here, Officer Colgan only employed his taser after Mr. Strickland had already stiff-armed him "with force" and continued running while ignoring multiple commands to stop – all examples of active resistance.[50] The Court does not find that four, at most, 30-second bursts of a taser used to execute the arrest of a person who has proven physically difficult to restrain is excessive. Further, under the second step, Mr. Strickland has not established that the unlawfulness of Officer Colgan's conduct was 'clearly established' at the time. *Bush* 513 F.3d at 500. And the Fifth Circuit has held that an officer's continued use of force after deploying their taser is not *clearly* unreasonable. *Cambre v. Gottardi*, 19-30715, 2025 WL 1304592, at *8 (5th Cir. May 6, 2025). Under these circumstances, the Court finds that Officer Colgan's use of force was reasonable.

Although Mr. Strickland does not allege that Officer Colgan participated in beating him, he does state that he saw the entire encounter and did not intervene.[51] "[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995). Fifth Circuit precedent requires a plaintiff to show that the bystander officer had a clearly established constitutional duty to intervene. *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020)).

In *Joseph*, the court decided that nine officers who observed two other officers tase and

---

[50] *Id.* at ¶ 36.
[51] Rec. Doc. 37 at ¶ 47.

beat an unresisting arrestee were entitled to qualified immunity because the plaintiffs were unable to carry their "burden to demonstrate that the law was 'clearly established'—that ... any reasonable officer would have known that the Constitution required them to intervene." *Id.* Mr. Strickland fails to make any arguments or identify any cases to demonstrate that the law was "clearly established"—that, as of March 6, 2020, the date of his encounter with the officers, any reasonable officer would have known that the Constitution required Officer Colgan to intervene. *See id.* ("We cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment"). The Court will not decide the underlying constitutional merits of a claim when "it is plain that the constitutional right is not clearly established," and the "briefing of the constitutional question is woefully inadequate." *Id.* at 346-7 (Oldham, J., concurring). Therefore, Officer Colgan is entitled to qualified immunity for the section 1983 claims against him.

### c.  *State Law Claims Against Officers Esque and Colgan*

Mr. Strickland also brings several state law claims against the arresting officers, including for assault, battery, and spoliation of evidence. Defendants argue that all the state law claims are also barred under Heck because Louisiana does not permit plaintiffs to maintain claims challenging the validity of an underlying criminal conviction.

#### i.   Assault and Battery

Under Louisiana law, "[e]xcessive force transforms ordinarily protected use of force into an actionable battery". *Penn v. St. Tammany Parish Sheriff's Office*, 02-0893 (La.App. 1 Cir. 4/2/03) 843 So.2d 1157, 1161. And Louisiana's excessive force tort [and by extension claims of assault and battery] mirrors its federal constitutional counterpart. *Deville v. Marcantel*, 567 F.3d 156, 172 (5th Cir. 2009). So, the Court must analyze whether the officer's actions were reasonable

considering the same factors as Mr. Strickland's section 1983 claims (namely if he showed that (1) he suffered significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable). *Id.* at 173 (citing *Penn v. St. Tammany Parish Sheriff's Office*, 843 So.2d 1157, 1159–60 (La.Ct.App.2003). As discussed above, the Court does not find Officer Esque's alleged use of force reasonable, therefore, Mr. Strickland's state law battery and assault claims against him survive for the same reasons. However, Mr. Strickland does not allege that Officer Colgan caused him any injury, and the Court finds that the deployment of his taser gun constitutes a protected use of force. Accordingly, the state law claims of assault and battery against Officer Colgan are dismissed.

ii.   Spoliation of Evidence

Defendants' Memorandum does not specifically mention the claim of spoliation of evidence, but they seek to dismiss the entire First Amended Complaint, so the Court will address it. Under Louisiana law, the theory of "spoliation of evidence" refers to the intentional destruction of evidence to deprive opposing parties of its use. *Desselle v. Jefferson Hosp. Dist. No. 2*, 887 So.2d 524, 534 (La.App. 5 Cir. 10/12/04); *see also Matter of Lasala*, 542 F.Supp.3d 439, 444 (E.D. La. 2021). The tort does not apply "where suit has not been filed, and there is no evidence that a party knew suit would be filed when the evidence was discarded" *Desselle*, 887 So.2d at 534. Mr. Strickland's amended complaint states nothing but conclusory allegations that the officers "intentionally destroy[ed] video and audio recordings of the encounter, including video captured by the Taser."[52] Conclusory allegations alone are insufficient to defeat a motion to dismiss. The amended complaint omits factual allegations necessary to plausibly plead that the officers

---

[52] Rec. Doc. 37 at ¶ 62.

intentionally destroyed evidence. Although Mr. Strickland previously alleged additional facts in his original complaint, the Court's analysis is confined to the operative pleading, and he did not adopt or incorporate the earlier pleading in his First Amended Complaint. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (noting that the amended complaint supersedes the original complaint and renders it of no legal effect). Therefore, this claim is dismissed.

### d.  *State Law Claims Against the City of Slidell*

Mr. Strickland seeks to hold the City of Slidell responsible for the injuries he allegedly received from Officers Esque and Colgan, and for the intentional or negligent hiring/ retention and failure to train the officers.[53] Although Defendants recognize that Mr. Strickland asserts state law claims against the City of Slidell, they present an argument as if he alleged federal section 1983 claims. The test for negligent hiring and retention and vicarious liability under Louisiana law is "a world apart from requiring [Mr. Strickland] to show an official policy of hiring and retaining unqualified officers" under section 1983. *Gomez v. Galman*, 18 F.4th 769, 780 (5th Cir. 2021). Thus, the Court will address the state law claims against the City of Slidell as they are pleaded.

### i.  Hiring and Retention of the Officers

"A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis" used in Louisiana for negligence claims. *Gomez*, 18 F.4th at 780 (quoting *Kelley v. Dyson*, 10 So. 3d 283, 287 (La. App. 5 Cir. 2009)). The elements of liability in a Louisiana negligence case are: (1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages. *Id.* As for the first element, "when an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a

---

[53] Rec. Doc. 1 at ¶¶ 55–61.

third party, he has a duty to exercise reasonable care in the selection of that employee." *Id.* (quotations omitted); *see also Cote v. City of Shreveport*, 73 So. 3d 435, 440 (La. App. 2011) (determining that the City of Shreveport had a duty to exercise reasonable care in the selection of its police officers).

Mr. Strickland has pleaded sufficient facts to show that Officer Esque benefited from the "unique opportunities" provided by his employment during his alleged assault. Officer Esque only encountered Mr. Strickland because he answered Officer Colgan's call for backup, and Mr. Strickland alleges that he beat him with a flashlight issued by the City of Slidell. So, these claims cannot be dismissed on the grounds that the City did not owe Mr. Strickland a duty to exercise reasonable care. Given that the other four elements are factual questions, the Court cannot decide them at the motion to dismiss stage. *See Gomez*, 18 F.4th at 781 (declining to dismiss state law claims for negligent hiring against the City of New Orleans for the same reasons).

ii.    Vicarious Liability

Under La. Civ. Code art. 2320, an employer may be held vicariously liable for the tortious acts of its employees only when they are performed "in the exercise of the functions in which they are employed." The test for vicarious liability is stricter than that of negligent hiring and retention because it requires Mr. Strickland to demonstrate that Officer Esque was not only enabled by the "unique opportunities" of his employment, but that his conduct "is within the course and scope of his employment." *Gomez*, 18 F.4th at 781 (citing *Patrick v. Poisso*, 882 So. 2d 686, 691 (La. App. 2 Cir. 2004) (quotations omitted). Mr. Strickland has pleaded enough facts to show that Officer Esque was acting in furtherance of his employer's objective for the same reasons discussed above. Officer Esque was only present on the scene because he responded to Officer Colgan's call for assistance arresting Mr. Strickland. The amended complaint alleges facts that Officer Esque's

17

actions were related to his duties as a police officer, and therefore the Court shall not dismiss the state law vicarious liability claim against the City at this stage.

### e. *Defendants' Motion for Partial Summary Judgment*

Defendants filed the pending Motion for Partial Summary Judgment to challenge Mr. Strickland's claims for punitive damages and attorneys' fees under 42 U.S.C. § 1988(b). They argue that punitive damages are not recoverable in this case because Mr. Strickland has not shown any evidence of malicious intent. Punitive damages may be awarded in section 1983 cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Supreme Court has described reckless indifference as "subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (citation omitted). Defendants' own Statement of Uncontested Material Facts makes it clear that there are actually several facts that could lead a jury to conclude that Officer Esque acted with the reckless or callous indifference required to recover punitive damages. The factual disputes regarding how Mr. Strickland sustained his injuries preclude summary judgment on punitive damages for his section 1983 claims against Officer Esque.

The Court agrees with Defendants that it is well settled that a section 1983 claim does not allow recovery of punitive damages against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270-71 (1981). Therefore, Mr. Strickland cannot recover punitive damages against the City of Slidell. Further, "[u]nder Louisiana law, punitive or other 'penalty' damages are not allowable unless expressly authorized by statute." *Int'l Harvester Credit Corp. v. Seale*, 518 So. 2d 1039, 1041 (La. 1988). Because Mr. Strickland does not identify a statute that authorizes

punitive damages for his state law claims he is barred from recovering punitive damages for them.

Finally, the Court will not dismiss Mr. Strickland's claim for attorneys' fees because the issue is premature. As Defendants point out, "the Civil Rights Attorney's Fee Awards Act of 1976 allows for the award of reasonable attorney's fees to the 'prevailing party' in cases brought under section 1983." At this stage, final judgment is not appropriate for either party (except for the claims against Officer Colgan). So, the Court will not assess the merits of Mr. Strickland's claim for attorneys' fees until there is a "prevailing party."

Accordingly;

**IT IS ORDERED** that the **Rule 12(B)(6) Motion to Dismiss the First Amended Complaint (Rec. Doc. 54)** is **GRANTED** to the extent that the section 1983 excessive force claims and state law assault and battery claims Officer Colgan are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Rule 12(B)(6) Motion to Dismiss the First Amended Complaint (Rec. Doc. 54)** is **GRANTED** to the extent that the spoliation of evidence claim against the officers is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the **Rule 12(B)(6) Motion to Dismiss the First Amended Complaint (Rec. Doc. 54)** is **DENIED** as to the section 1983 excessive force claims and state law assault and battery claims against Officer Esque and the state law claims against the City of Slidell.

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 58)** is **GRANTED** to the extent that Mr. Strickland cannot recover punitive damages against the City of Slidell or for his state law claims against the officers.

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 58)** is **DENIED** as to whether Mr. Strickland can recover punitive damages and attorneys'

fees for his section 1983 excessive force claims.

February 9, 2026

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE